MDL 1760

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FEB 27 2006

FILED
CLERK'S OFFICE

BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

------------------------------------x
:                                    MDL Docket No. 1760
IN RE BISPHOSPHONATE DRUGS PRODUCTS :
LIABILITY LITIGATION                :
:
:
------------------------------------x

PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF HER MOTION FOR MULTIDISTRICT TRANSFER

Margaret Cartelli ("Plaintiff" or "Movant") respectfully submits this reply memorandum of law in further support of her motion, pursuant to 28 U.S.C. § 1407(a), for transfer of all products liability actions pending in federal court involving the prescription medications Aredia, Zometa, Fosamax and Actonel to a single federal district court for coordinated or consolidated pretrial proceedings. Movant also submits this reply memorandum in response to the papers opposing her motion filed by Novartis Pharmaceuticals Corporation ("Novartis"), Merck & Co., Inc. ("Merck"), Procter & Gamble Pharmaceuticals, Inc. ("P&GP") and

OFFICIAL FILE COPY

IMAGED FEB 2 8 2006

Aventis Pharmaceuticals, Inc. ("Aventis"), and approximately forty plaintiffs in four actions pending in federal court in Tennessee ("Tennessee Plaintiffs").

The parties opposing Plaintiff's motion for centralization generally make one or more of the following arguments: these cases lack sufficient common questions of fact to warrant multidistrict transfer; this litigation is too limited to warrant multidistrict transfer; voluntary cooperation and coordination makes centralization unnecessary; and discovery commenced in other cases precludes centralization. In the event this Panel determines that multidistrict transfer is appropriate, Novartis and the Tennessee Plaintiffs argue that the cases should be transferred to the United States District Court for the Middle District of Tennessee.

The arguments in opposition to multidistrict transfer are not new and should be rejected based on this Panel's precedents or fail upon closer examination of the facts.

### **PENDING FEDERAL COURT BISPHOSPHONATE ACTIONS**

There are at least forty-six actions, on behalf of approximately eighty-eight plaintiffs, presently pending before eight federal district courts alleging that the plaintiffs developed osteonecrosis of the jaw as a result of being given or taking Aredia, Zometa, Fosamax and/or Actonel. See Declaration of

Katharine R. Latimer dated February 16, 2006 ("Latimer Decl.") at ¶¶ 3-5, submitted in support of Novartis' opposition to Plaintiff's motion. Of the forty-six pending cases, thirty-five cases are included in Plaintiff's motion and eleven cases are related potential tag-along actions. Latimer Decl. at ¶ 5.

The number of related tag-along actions will increase. In fact, counsel for Plaintiff expects to file at least twelve new cases in the next few weeks.

### ARGUMENT

### POINT I

### COMMON QUESTIONS OF FACT EXIST

Defendants claim that multidistrict transfer is not appropriate in these cases because there are too few common questions of fact and they do not predominate over the individualized fact questions. See Novartis Pharmaceuticals Corporation's Memorandum of Law in Opposition to Motion for Multidistrict Transfer, dated February 16, 2004 ("Novartis Mem."), at 10-18; Merck & Co., Inc.'s Response to Motion for Transfer and Coordination or Consolidation Under 28 U.S.C. § 1407, dated February 16, 2006 ("Merck Mem.") at 10-12; Proctor & Gamble Pharmaceuticals, Inc.'s and Sanofi-Aventis U.S. LLC'S Opposition to Plaintiff's Motion to Transfer Actions to Multidistrict Litigation, served February 16, 2006 ("P&G/Aventis Mem.") at 4-9. In fact,

however, multidistrict transfer under "Section 1407 does not require a complete identity or even a majority of common factual and legal issues as a prerequisite to centralization." In re Phenylpropanolamine, 173 F.Supp.2d at 1379 (J.P.M.L. 2001). See also In re Accutane, 343 F.Supp.2d at1383 (J.P.M.L. 2004).

In an effort to create the appearance that these cases have little in common and are driven by factual differences, defendants note that there are "*four* distinct pharmaceutical products and *four* distinct corporate defendants." Novartis Mem. at 10. According to the defendants the drugs are different compounds, are administered differently, and have different indications, dosages and regimens. See, e.g., Merck Mem. at 3-4 and P&G/Aventis Mem. at 6-8. Defendants also assert that the four companies differ in how they developed, tested, manufactured and marketed the drugs and with regard to their knowledge of side-effects. See, e.g., Novartis Mem. at 11-13.

Defendants disregard the fact that all four drugs are in a class of prescription medications called bisphosphonates and completely ignore the fact that every plaintiff developed osteonecrosis of the jaw after being given or taking one or more of the drugs. Defendants also fail to discuss the fact that while each defendant may have different information and documents,

plaintiffs will seek the same type of discovery, relating to the same issues from each company.

Ultimately, defendants contend that multidistrict transfer of these cases is precluded by the fact that there are four drugs and four defendant companies involved. This Panel, however, has granted motions for transfer in multidistrict drug products liability actions in which there were more than one medication at issue and in which there were multiple defendants.

In <u>In re Bextra and Celebrex Prods. Liab. Litig.</u>, 391 F.Supp.2d 1377 (J.P.M.L. 2005), this Panel granted the motions to centralize the cases despite the fact that Bextra and Celebrex are different drugs, i.e., different compounds, different dosages, and different regimens. The defendant drug company in <u>In re Bextra and Celebrex</u> had argued that "the presence of unique questions of fact relating to each drug . . . or to the type of claims asserted" should preclude centralization. Similarly, this Panel granted motions to centralize in <u>In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.</u>, 990 F. Supp. 834 (J.P.M.L. 1998), despite the fact that the cases involved three separate drugs, i.e., different compounds, different dosages, and different regimens. Defendants opposing the motions argued that "non-common questions of fact relating to individual causation and damages will predominate."

In re Ephedra Prods. Liab. Litig., Docket No. 1598 (J.P.M.L. 2004), there were at least twenty separate defendants. This Panel rejected defendants' argument against centralization, that there were "unique questions of fact relating to each defendant," and granted the motion for centralization. Motions for centralization were also granted, despite multiple defendants in In re Meridia Prods. Liab. Litig., 217 F.Supp.2d 1377 (J.P.M.L. 2002) (four defendants); In re Phenylpropanolamine Prods. Liab. Litig., 173 F.Supp.2d 1377 (J.P.M.L. 2001) (at least five defendants); and In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig., 990 F.Supp. 834 (J.P.M.L. 1998) (twelve defendants).

This Panel has routinely found common questions of fact and granted motions to centralize drug products liability actions despite some differences among the cases. In In re Phenylpropanolamine there were "differences among the actions in terms of named defendants, specific products involved, legal theories of recovery, status as class actions, and/or types of injury alleged." 173 F.Supp. at 1379. As the Panel explained "[t]ransfer under Section 1407 has the salutary effect of placing all actions in this docket before a single judge who can formulate a pretrial program that: 1) allows discovery with respect to any non-common issues to proceed concurrently with discovery on common

issues . . .." 173 F.Supp. at 1379. <u>See</u> <u>also</u> <u>In re Bextra and Celebrex</u>, 391 F.Supp.2d 1377; <u>In re Vioxx Prods. Liab. Litig.</u>, 360 F.Supp.2d 1352, 1354 (J.P.M.L. 2005); <u>In re Ephedra Prods. Liab. Litig.</u>, Docket No. 1598 at 2 (J.P.M.L. 2004); <u>In re Prempro Prods. Liab. Litig.</u>, 254 F.Supp.2d 1366, 1368 (J.P.M.L. 2003); <u>In re Phenylpropanolamine Prods. Liab. Litig.</u>, 173 F.Supp.2d 1377, 1379 (J.P.M.L. 2001).

In each of the present cases plaintiff alleges that he or she developed osteonecrosis of the jaw after being prescribed one or more of the bisphosphonate drugs, Aredia, Zometa, Fosamax or Actonel. The cases share common questions of fact, specifically questions relating to defendants' development, testing, and marketing of the drugs, defendants' knowledge of the adverse reactions to the drugs, the performance and the characteristics of the active bisphosphonate component, and causation of the side effect. These common questions are sufficient to justify a multidistrict transfer and centralization of this litigation.

## POINT II

### **CENTRALIZATION IS NECESSARY**

Each party opposing Plaintiff's motion to centralize these cases argues, in one form or another, that centralization is not necessary. Novartis Mem. at 7-10; Merck Mem. at 9, 12; P&G/Aventis Mem. at 12-14; Memorandum of PGRW Respondents [Tennessee Plaintiffs] in Opposition to § 1407 Transfer, dated February 15, 2006 ("PGRW Mem.") at 3-6. According to the parties opposing centralization: (1) there are a "limited" number of cases, plaintiffs, lawyers, jurisdictions, and/or judges, thus multidistrict transfer is not warranted (see, e.g., Novartis Mem. at 7); and, (2) voluntary cooperation and coordination will achieve the same goals.

This litigation is not "limited" in the number of cases, plaintiffs, jurisdictions, judges or lawyers involved. There are already forty-six actions pending on behalf of eighty-eight plaintiffs in eight federal district courts. Latimer Decl. at ¶¶ 3-5. And six different law firms, from six cities, have appeared in connection with Plaintiff's motion alone. Moreover, the number of related tag-along actions will increase. Plaintiff's counsel expects to file more cases on behalf of additional plaintiffs. Moreover, the number of cases, jurisdictions and judges involved will also increase if Novartis moves, prior to centralization, to

change venue in many of the cases pending in New York federal court as it plans to do (Novartis Mem. at 9, n. 12)[1] or is successful in its expected opposition to class certification in the four cases pending in Tennessee. See P&G/Aventis Mem. at Exhibit A. For example, plaintiffs in the four putative class actions pending in Tennessee reside in twenty-six states and at least one foreign country. Id.

In any event, multidistrict transfer motions seeking centralization have been granted in litigation matters involving far fewer cases and fewer courts. See Distribution of Pending MDL Dockets (as of January 10, 2006), attached as Exhibit 5 to PGRW's Appendix of Exhibits. For example, in In re Accutane Prods. Liab. Litig., 343 F.Supp.2d 1382 (J.P.M.L. 2004), there appear to have been no more than nineteen cases from approximately eight districts. Id.

The parties opposing Plaintiff's motion prefer, not surprisingly, to rely on voluntary cooperation and coordination.

---

[1] Novartis states that it "intends to move to transfer the cases involving plaintiffs who do not reside in the Eastern or Southern District of New York to the plaintiffs' home fora" and asks this Panel to "refrain from ordering transfer here . . . until after the Southern and Eastern Districts of New York determine the appropriate venue for each case." This request should be denied. Novartis' motions to change venue can be made after pretrial proceedings are completed, if necessary, for those cases proceeding to trial.

In <u>In re Prempro Prods. Liab. Litig.</u>, 254 F.Supp.2d 1366 (J.P.M.L. 2003), defendants objected to centralization and argued, in part that "the interests behind Section 1407 can be better accommodated in this docket through separate voluntary coordinating efforts." This Panel rejected defendants' argument, stating "while we applaud defendants' spirit of cooperation,, we observe that transfer under Section 1407 has the benefit of placing all actions in this docket before a single judge who can structure pretrial proceedings to consider all parties' legitimate discovery needs . . .." 254 F.Supp.2d 1367-68.

The Panel should reject the same proposal to rely on voluntary cooperation and coordination in these cases. Even assuming good will among counsel, coordinating extensive discovery in dozens of cases, on behalf of numerous plaintiffs, with counsel spread out around the country is very difficult and requires a court's attention.

## POINT III

**THE FACT THAT DISCOVERY HAS COMMENCED IN SOME CASES, AND NOT OTHERS, SHOULD NOT PRECLUDE CENTRALIZATION**

Plaintiffs in the Tennessee cases argue that centralization should be denied because their cases have progressed substantially and are proceeding "expeditiously" toward trial. PGRW Mem. at 2-3, 4. <u>See</u> <u>also</u> Novartis Mem. at 6, 9, 18.

In fact, the four cases pending in Tennessee are "still in early stages" (Novartis Mem. at 18) and will be tied up in class certification issues for the next year. Pursuant to the case management orders entered in the four Tennessee cases, class certification discovery will continue until March 2007, at which time merits discovery will commence. See Case Management Orders, attached as Exhibits 1-4 to PGRW's Appendix of Exhibits.

Finally, the first trial scheduled is in the case pending in Oklahoma and that is not until June 2007. Latimer Decl. at ¶ 4. The cases pending in Tennessee are not scheduled for trial until November and December 2007. Latimer Decl. at ¶ 3.

## POINT IV

### TRANSFER TO NEW YORK IS APPROPRIATE

The Tennessee Plaintiffs, for obvious reasons, and Novartis suggest, in the event this Panel determines that centralization is appropriate, that these cases be transferred to the United States District Court for the Middle District of Tennessee. PGRW Mem. at 6; Novartis Mem. at 18-19. The parties suggesting centralization in the Middle District of Tennessee contend that: (1) Nashville is "more centrally" located than New York and is easily accessible, (2) more individual claims have been filed in that district than in any other district, (3) the Tennessee cases are further along and significant discovery has

already taken place, (4) the Middle District of Tennessee is better able to accommodate a multidistrict litigation. Upon closer examination, these arguments fail to support the choice of the Middle District of Tennessee.

While Nashville does have an "international airport" and is near "major interstate highways," it is neither more centrally located nor more convenient than New York. Of the six attorneys who have appeared in connection with Plaintiff's motion are located in Tennessee; counsel have offices in New York, New York, Jackson, Mississippi, Towson, Maryland, Washington, D.C., Dallas, Texas, and Austin, Texas. Other involved counsel are "scattered throughout the country in states such as California, Florida . . . Oklahoma [and] Tennessee." P&G/Aventis Mem. at 9. Moreover, while plaintiffs are truly spread out around the country, three of four defendants' principal places of business are in the New York metropolitan area. And New York City has three major airports and is easily accessible by train and automobile.

The suggestion that more "individual claims" are pending in Tennessee is, at best, misleading. The four cases in Tennessee are putative class actions. If each of the plaintiffs in the Tennessee cases had filed true individual claims, without the class action allegations, most would be subject to the same motion to change venue that Novartis has stated it intends to make in the New

York cases. The plaintiffs in the four putative class actions pending in Tennessee reside in twenty-six states and at least one foreign country. See P&G/Aventis Mem. at Exhibit A. Of the plaintiffs who have brought claims in these case, eight reside in New York state, seven in California and Texas, six in Florida and North Carolina, five in Arkansas, Kansas and Pennsylvania, and four in several states including Tennessee.

As explained above, the Tennessee cases are not significantly more advanced than the more recently filed cases. Moreover, regarding the discovery that has been conducted, much of it has been done outside of Tennessee. Novartis produced 1.8 million pages of documents in Washington, D.C. and Merck intends to produce documents in Pennsylvania. PGRW Mem. at 2.

Finally, this Panel appears to prefer to transfer multidistrict cases to courts with, among other things, jurists experienced in complex multidistrict litigation. See In re Vioxx, 360 F.Supp.2d at 1354. There is no doubt, nor any argument from the parties opposing Plaintiff's motion, that the Eastern and Southern Districts of New York have many judges with experience and expertise in multidistrict litigation and, particularly, products liability cases.

While the Middle District of Tennessee may have a lighter caseload per judge and fewer current (and past) multidistrict

cases, it is also a smaller court, less likely to be able to handle the added burden of another complex multidistrict litigation. In fact the Middle District of Tennessee only has six judges.

## **CONCLUSION**

Plaintiff's motion should be granted because the actions share common factual questions, including questions relating to: (1) the defendants' development, testing, manufacturing and marketing of the drugs, (2) defendants' knowledge of the alleged adverse effects of the drugs, and (3) causation of the side effects. In addition, transfer would serve the convenience of the parties and witnesses and would promote the just and efficient conduct of the actions.

For the reasons set forth in this reply memorandum, Movant's original memorandum of law and the accompanying Affidavit, the Judicial Panel should grant Plaintiff Margaret Cartelli's motion for a transfer of these multidistrict actions pursuant to 28 U.S.C. § 1407(a) and the transferee court should be the United

States District Court for the Eastern District of New York or the Southern District of New York, Manhattan Branch.

Dated:   New York, New York
         February 24, 2006

                                      BEATIE AND OSBORN LLP

By:  _____
     Philip J. Miller (PM 1149)
     Russel H. Beatie (RB 4439)
     Daniel A. Osborn (DO 2809)
     521 Fifth Avenue, Suite 3400
     New York, New York  10175
     Telephone:  (212) 888-9000
     Facsimile:  (212) 888-9664

     THE POWELL LAW FIRM, L.C.
     269 S. Beverly Dr., Suite 1156
     Beverly Hills, California 90212
     Telephone: (888) 238-1998
     Facsimile: (310) 388-1570

     LAW OFFICES OF JEFFREY C. BOGERT
     501 Colorado Blvd., Suite 208
     Santa Monica, California 90401
     Telephone: (310) 395-5025
     Facsimile: (310) 395-5071

     Attorneys For Plaintiff
      Margaret Cartelli

*JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION*

*FEB 27 2006*

*FILED
CLERK'S OFFICE*

**BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

```
------------------------------------x
IN RE: BISPHOSPHONATE DRUGS         :    MDL Docket No. 1760
PRODUCTS LIABILITY LITIGATION       :
------------------------------------x
```

**FOURTH PROOF OF SERVICE**

```
STATE OF NEW YORK     }
                      :ss.
COUNTY OF NEW YORK    }
```

The undersigned, being duly sworn, deposes and says that he is over the age of 18 years and is not a party to this action. That he served the within **PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HER MOTION FOR MULTIDISTRICT TRANSFER** on (see attached service list), the addresses having been designated by those companies for that purpose, by causing to be deposited a true copy of the papers, securely enclosed in a postage pre-paid, properly addressed envelope in an official depository under the exclusive care and custody of the United States Postal Service and by facsimile to the individuals on the attached Service List.

_____
Benjamin Coleman

Sworn to before me this
24th day of February, 2006

_____
Notary Public
**ESTHER ROSA**
**Notary** Public, State of New York
No. 01RO6055778
Qualified in Queens County
Commission Expires March 5, 20 07

*2006 FEB 27 A 11:47
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION
RECEIVED
CLERK'S OFFICE*

Docket: 1760 - In re Bisphosphonate Drugs Products Liability Litigation

Status: Pending on / /

Transferee District:     Judge:                                                                                   Printed on 02/07/2006

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| Beatie, Russel H.<br>Beatie & Osborn, LLP<br>521 Fifth Avenue<br>Suite 3400<br>New York, NY 10175 | => Bartoli, John*; Biocca, Zena*; Burt, Burdette*; Cartelli, Margaret*; Carter, Patsy*; Champion, Runette*; Cuthbert, Jack*; Dengel, Suzanne*; Fry, Gary*; Gee, Loretta*; Grizzle, Shirley A.*; Guilbeau, Elaine*; Harrison, Ramon L.*; Harth, Margaret Peggy*; Hendrix, Michel*; Hiller, Glenn*; Hogan (Surviving Spouse/Exe./Est.-Timothy), Karleen*; Johnson, Linda H.*; Kalily, Victor*; Knopf, Mindy J.*; Martinez, Mayra*; Perkins, Arlene*; Punnose, K. Thomas*; Radin, Nancy*; Shrum, Helen E.*; Simmons, Lena*; Stevens, Gary*; Ulatowskl, Charles*; Wallace, Linda*; Wilson, Jacqueline* |
| Germany, Robert G.<br>Pittman, Germany, Roberts & Welsh, LLP<br>P.O. Box 22985<br>Jackson, MS 39225-2985 | => Anderson, Terry*; Arbuckle, Donald*; Becker, Susan*; Blumenshine, Mary*; Bowden, Abbie*; Brown, Marsha*; Brown, Victor*; Calloway, Francis Jo*; Casali, Angelina*; Eberhart, Susan*; Evers, Karen*; Foster, Betty*; Fragomenli, Fred*; Hill, Carol*; Kennedy, James*; Landesman, Jacob*; Lopreato, Carolyn*; McCleery, Sally*; McDaniel, Eula Mae*; Melau, Edwin*; Melching, Brenda*; Miller, Elizabeth*; Montgomery, Bobby Lynn*; Newman, Phyllis*; Nichols, Trent*; Olson, Donna*; Orozco, Sam*; Patton, James*; Raber, Sarah*; Reinardy, Sally*; Roman, Corina Maria*; Russo, Addolorata*; Smith, Carol*; Strakhov, Suzanne*; Talley, Marie*; Thompson, Debra*; Tracy, George*; White, Denise*; Williams, Alison*; Wolfe, Gwendolyn*; Wood, Angela*; Woollard, Randy*; Zinger, Otilia* |
| Hill, III, M. King<br>Venable, LLP<br>210 Allegheny Avenue<br>P.O. Box 5517<br>Towson, MD 21204 | => Merck & Co., Inc.* |
| Latimer, Katharine R.<br>Spriggs & Hollingsworth<br>1350 I Street, N.W.<br>9th Floor<br>Washington, DC 20005 | => Novartis Pharmaceuticals Corp.* |
| Turley, Windle<br>Law Offices of Windle Turley, P.C.<br>1000 Turley Law Center<br>6440 North Central Expressway<br>Dallas, TX 75206 | => Ingram (Ind./Surviving Spouse-Rick), Linda* |
| Varney, Lana K.<br>Fulbright & Jaworski, L.L.P.<br>600 Congress Avenue<br>Suite 2400<br>Austin, TX 78701-3271 | => Aventis Pharmaceuticals, Inc.*; Proctor & Gamble Pharmaceuticals, Inc.* |

Note: Please refer to the report title page for complete report scope and key.